Pjsaesoít,
 
 J.
 

 If a
 
 partner
 
 executes a
 
 mortgage
 
 of the whole or any portion of the partnership effects, as a security to an individual creditor, the mortgagee takes, subject to the equity of the other members of the,firm, to have the effects first applied to the discharge of the partnership debts, and acquires only the interest of the mortgagor ; i. c., his share of the surplus, if any, after the liabilities and debts of the firm are paid and the business is wound up. This is a well-settled principle and is applied not only to mortgages, but to sales under execution in favor of a private creditor of one member of the firm.
 

 This doctrine was properly conceded in the argument, but it was insisted, for the plaintiff, that the land, together with the marine rail-road, buildings and other fixtures, did not constitute a part of the partnership effects; for that it was not embraced in the original copartnership; and in the second place, if it was, as the agreement was notin writing, it is void in respect to the land by the statute of frauds. IVe are satisfied, that although the legal title to the land remained in the respective members of the firm as tenants in common, yet the use of it did constitute a part of the partnership effects. ¥o are led to this conclusion by many circumstances and considerations: The deed of "William and Joseph Robinson to Malachi Robinson, December, 1841,recited: “Whereas, Malachi, William and Joseph Robinson, have agreed to associate
 
 themselves
 
 together as copartners, under the name of Robinson and Brothers, for the purpose of carrying on the ship-carpentcr’s business, and have farther agreed to become interested in the property hereinafter mentioned, in the proportion of one half by Malachi, and one half by William and Joseph, for the purpose of carrying on the said business.” The deed, then,
 
 *444
 
 conveys to Malachi all right and interest in one half of the land, marine railway, buildings and other fixtures, and timber on hand, tools, saws, bellows and anvil, and other articles, bought at the sale of the effects of the late firm of Noe and Robinson. A deed of the same date, executed by Malachi Robinson to William and Joseph Robinson, recites, that by articles of agreement between Malachi Robinson and John Noe, deceased, they had entered into copartnership in the ship-carpenter’s business, under the name of Noe and Robinson, and held the following property, as effects of the firm, setting out the land, railway, &c., the same as the other deed. In April, 1843, Malachi Robinson, by deed, conveys to Thomas Howard, all his undivided half or right, title and claim in the land and railway, &c., tools, &c., describing the same property, and the business was then carried oil by Howard and William and Joseph Robinson, as copartners, using and treating the land, tools, &c., as effects of the firm. In
 
 February,
 
 1845, Joseph Robinson, by deed, conveys to James Pittman, all his undivided one-fourth part or right, title and claim in the land, railway &c., tools &c., describing the same property, and. the business was then carried on by Howard and William Robinson and James Pittman, as copartners, using and treating the land, tools &c., as effects of the firm.
 

 So, this land has been used for many years as partnership property ; first by the firm of Noe & Robinson ; then by Robinson and Brothers; then by Howard and the two Robin-sons, and then by Howard, Robinson
 
 &
 
 Pittman ; and although these several firms were unconnected, and one was followed in succession by another, still the same land, tools &c., constituted the effects of the respective firms, and the land was identified and became justas much a part of the effects of the firm as the “bellows and anvil,” or other implements. The land was necessary for the purposes of the firm ; in tact, the business could not be carried on without it. The land was not only used and treated by Howard, Robinson and Pittman, as a part of the effects of the firm in the usual way, but a house was built on it for Pittman to live in ; How
 
 *445
 
 ard’s bouse, on it, was repaired at a large expense, and a shed and other buildings were erected, all of which was done and paid for by the firm. The deed of mortgage by Pittman to Miller, February, 1849, conveys all of Pittman’s “ undivided one fourth
 
 share, i/nterest, estate
 
 and
 
 claim
 
 in the
 
 land,
 
 together with the marine railway, buildings, improvements, and every part of the
 
 gear, tools
 
 and appurtenances thereunto belonging.” So that the deed, under which the plaintiff claims, connects the land and tools, and treats them alike as effects of the firm.
 

 The question is, does the statute of frauds make void this copartnership agreement in respect to the land? "We find it settled by authority, that it does not; and we fully concur in the reasoning on which that conclusion is based ;
 
 Dale
 
 v.
 
 Hamilton,
 
 5 Hare’s Rep. 369, and the cases there cited, where the subject is fully discussed. Adams’ Eq. 36; “If land is acquired as the substratum of a partnership, or is brought into and used by the partnership, for partnership purposes, there will be a
 
 trust by operation of law,
 
 for the partnership as tenants in common, although a trust may not have been declared in writing, and the ownership may not be apparently in all the members of the firm, or if in all, may apparently be in them as joint-tenants.”
 
 Hargrave
 
 v.
 
 King,
 
 5 Ire. Eq. 430;
 
 Cloninger v. Summit,
 
 2 Jones’ Eq. 513, are cases where the agreement, in respect to land, was held not to be within the operation of the statute, upon the same principle of enforcing the execution of a trust.
 

 In our case, the legal ownership Avas in Howard, Robinson and Pittman, as tenants in common, but a trust was implied by operation of law, because it was a partnership transaction. The land was necessary for the purposes of the association, and was brought in and used for partnership purposes, and a trust, by operation of law', is not within the operation of the statute.
 

 PeR Cubiam, Bill dismissed.